CHANDLER, J.,
for the court.
¶ 1. On January 27, 1997, David Jones pled guilty to a charge of armed robbery. He was sentenced by the Circuit Court of Chickasaw County to a term of ten years in the custody of the Mississippi Department of Corrections. Thereafter, on February 18, 1998, Jones filed a motion for post-conviction relief asserting that his plea was involuntary because he was misinformed as to the maximum sentence of life imprisonment. After an evidentiary hearing on the issues, the trial court denied the motion. Feeling aggrieved by this denial, Jones has perfected this appeal and alleges two assignments of error. First, Jones argues he received ineffective assistance of counsel because his attorney erroneously informed him that the trial judge could sentence him to life in prison if the case went to trial. Jones also argues that the trial judge erred in advising him during the plea .colloquy that the judge could sentence him to a maximum term of life in prison.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. On or about December 7, 1995, David Jones and Gregory Houston attempted to rob Ross’ Liquor Store in Chickasaw County, Mississippi. Jones and Houston met at Houston’s home and walked to the liquor store before it opened. Once there they cut the telephone line to the store. When the store opened, Jones went into the store armed with a .22 caliber pistol. Jones demanded the money in the cash register. Shots were exchanged between Ross and Jones. Jones was found approximately one hundred yards from the store with a gunshot wound to the back. Jones later confessed to the crimes. Counsel for Jones presented him with a plea agreement of ten years from the State. Jones accepted the plea and was sentenced by the Circuit Court of Chickasaw County to ten years in the custody of the Mississippi Department of Corrections. Jones filed a motion to vacate sentence and plea. After an evidentiary hearing on the matter, the circuit court denied relief.
LAW AND ANALYSIS
I. WAS JONES DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS ATTORNEY ADVISED HIM THAT HE COULD BE SENTENCED TO LIFE IN PRISON IF HE PROCEEDED TO TRIAL?
¶ 4. Jones argues on appeal that his counsel rendered ineffective assistance because he “coerced” Jones into accepting the State’s plea agreement. Jones maintains that his counsel told him that if he went to trial, the judge could sentence him to life imprisonment if found guilty of attempted armed robbery. Jones asserts that because such a sentence is within the sole province of the jury, this advice amounted to coercion.
¶ 5. Jones was indicted pursuant to Miss. Code Ann. § 97-3-79 (Rev.2000). That statute reads as follows:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by vio *1285 lence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
Miss.Code Ann. § 97-3-79 (Rev.2000).
¶ 6. Claims of ineffective assistance of counsel are judged by the standard in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two-part test set out in Strickland is whether counsel’s performance was deficient and, if so, whether the deficiency prejudiced the defendant to the point that “our confidence in the correctness of the outcome is undermined.” Richardson v. State, 769 So.2d 230 (¶ 10) (Miss.Ct.App.2000). A strong but rebuttable presumption exists that “counsel’s conduct falls within a broad range of reasonable professional assistance.” McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). To overcome this presumption, the defendant must show that “but for” the deficiency a different result would have occurred. Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
¶ 7. Jones was granted an eviden-tiary hearing on the issues he asserts as error on appeal. This Court will not disturb findings of a trial court after an evi-dentiary hearing in a post-conviction relief case “unless, although there is evidence to support [the trial court’s findings], we are on the entire evidence left with the definite and firm conviction that a mistake has been made.” Mohr v. State, 800 So.2d 1208 (¶ 5) (Miss.Ct.App.2001) (quoting Lambert v. State, 777 So.2d 45 (¶ 10) (Miss.2001)).
¶ 8. At the evidentiary hearing, Jones indicated that he knew at the plea hearing that if he went to trial, the judge could sentence him to more than ten years. Jones also indicated that he decided to accept the plea agreement because he did not want to risk a sentence longer than the ten years offered by the State. Jones’s testimony in pertinent part is as follows:
Q: Now, in your petition, you correctly state that only a jury could give you a life sentence, is that right?
A: That’s right.

Q: Okay, but you also knew that day that the judge could give you more than ten years. If you had had a trial, the judge could have given you more than ten years. You knew that on the 27th of January 1997, didn’t you?

A: Yeah, I knew that.

Q: Okay. You opted that day to book the ten rather than risk His Honor or another judge, whoever was sitting that day at trial, of giving you more than ten years at the end of the trial; isn’t that right—

A: That’s right.

Q: Ya’ll were guilty. You didn’t deny it. You figured if you had a trial if the jury didn’t give you life, the judge would give you more than ten; so you took the ten.

A: That’s right.

Transcript of Evidentiary hearing (emphasis added).
¶ 9. Counsel for Jones testified at the evidentiary hearing as well. His testimony in pertinent part is as follows:
Q: Usually in a criminal case a defense attorney, the first thing he does is file all his constitutionally permissible motions for discovery; is that right?
A: Yes, sir.
*1286 Q: And in this case did you do that?
A: I did file discovery.
Q: Did you go over the discovery when you received it?
A: After I received the discovery, I called Mrs. Jones and her son in and we went over the discovery ... I explained to him that after going over everything pro and con that the ultimate decision to plead guilty, that' decision is theirs. I’m just here to point and assist them. And after we had gone over everything, David, you know, he didn’t want to do life. ■ He wanted to do as less as possible.
Q: In the course of your discussion with Mr. Jones, you made illusion to the fact that he did understand that he could receive a life sentence at trial.
A: Yes. We had gone over that from the time he retained me, about armed robbery carries a minimum of three up to life; and you know, he didn’t want to get life. I told him, you know, if we tried the case with all the voluminous evidence that they had against him ... and if you go through that, you could get life; and he didn’t want that; so that’s why he opted to accept the recommendation of ten years that they made.
Q: He understood that if he had a jury trial, he could get a life sentence.
A: Life, fifty years, sixty years, whatever.
¶ 10. After hearing all the testimony, the trial judge ruled that Jones was properly advised by his attorney. He further held that Jones adequately understood the proceedings and the nature and consequences of offering his plea; that such plea was freely and voluntarily given after having been advised by competent counsel. The judge further stated, “[f]rom his testimony it is apparent that he understood that the minimum he could receive was three years and the maximum he could receive was a life sentence or anywhere in between; and he opted to take the ten years rather than go to trial and face the possibility of receiving a life sentence or something less than life .... ”
¶ 11. On appeal, Jones now asserts that he would not have accepted the plea agreement if he had known that he could not be sentenced to life in prison absent a jury recommendation. His testimony at the evidentiary hearing clearly contradicts this assertion. Jones gave this testimony while under oath. “Solemn declarations in open court carry a strong presumption of verity.” Richardson v. State, 769 So.2d 230 (¶ 6) (Miss.Ct.App.2000). The judge did not abuse his discretion in relying upon Jones’s testimony at the evidentiary hearing.
¶ 12. Although Jones has provided this Court with no evidence to support his contention that his attorney misinformed him as to the maximum sentence the trial judge could give him if he were found guilty at trial, assuming arguendo that he was misinformed, this misinformation could satisfy the first prong of Strickland. However, he has clearly failed to meet the second prong. Because Jones testified that he would not have gone to trial and risked a sentence longer than ten years, he has failed to demonstrate that the result would have been different but for the alleged misinformation.
II. DID THE TRIAL JUDGE COMMIT REVERSIBLE ERROR IN ADVISING JONES THAT HE COULD SENTENCE JONES TO A MAXIMUM SENTENCE OF LIFE IN PRISON?
¶ 13. Jones argues that the trial judge erred in advising him that the judge could impose a maximum sentence of life *1287 imprisonment on Jones pursuant to his guilty plea. He further argues that his plea was not intelligently and voluntarily made because the judge failed to advise him of the correct maximum and minimum sentences.
¶ 14. In order to meet constitutional standards, a guilty plea must be freely and voluntarily entered. Brasington v. State, 760 So.2d 18 (¶ 29) (Miss.Ct.App.1999). It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understand the charge, how it involves him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty. Id.
¶ 15. It is, as Jones contends, that the trial judge misinformed him that the maximum penalty for armed robbery is life, when in fact the maximum sentence without a jury recommendation is a reasonable term of years less than life. However, the above cited language from Jones’s plea hearing reflects that Jones accepted the plea because he did not want to risk a sentence longer than the ten years offered by the State. Jones’s testimony from the evidentiary hearing and the plea hearing indicate that he fully understood the charge against him, the rights he was waiving in entering the guilty plea, and the fact that he would serve every day of the ten years the State was recommending. Because Jones clearly stated under oath that he did not want to go to trial, he was not prejudiced by the judge’s statement that he could sentence Jones to life in prison. Any failure to distinguish between the sentence that a jury could mete out and that the court could render was harmless. Gaskin v. State, 618 So.2d 103, 108 (Miss.1993).
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF CHICKASAW COUNTY DENYING POST-CONVICTION RELIEF IS HEREBY AFFIRMED. COSTS ARE ASSESSED TO CHICKASAW COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.